Good morning. May it please the court, counsel for the government, my name is Dean Arnold, I represent Mauricio Aguilera along with co-counsel William Osterhout. Since close of briefing in this case there have been two issues that have been raised, one by Mr. Aguilera, one by the court. I'd like to address those first. The court asked counsel to discuss the impact if any of  case of Ross v. Van Boning, which is a recent en banc decision from the Ninth Circuit. Deeding with structural error. I'm sorry? The case Deeding with structural error. Yes, Your Honor. Yes. It was based upon the Supreme Court decision in Herring v. New York, and the Ninth Circuit concluded that preclusion of closing argument in a criminal case had the significance of closing argument in a criminal case. The first thing they said, the last clear chance to persuade the trier of fact that reasonable doubt exists. And they also said it may correct a premature misjudgment and avoid an erroneous verdict. And in Frost they concluded that there was a Herring error that required structural error, but then they said here there was much more. They said that in that case Mr. Frost was prevented from arguing a legitimate defense theory, while at the same time the government was freely allowed to argue that the government had proven its case against Mr. Frost. It doesn't really have anything to do with this case, does it, counsel? In this case, not only did your side argue your point, but argued it in closing argument, argued it as part of the evidence. As I understand it, the only thing that the judge prohibited counsel from doing in the closing argument was to argue about something where the evidence to which he referred had not been introduced. Isn't that what we're dealing with in this case? No, I disagree, Your Honor. Okay. Tell me why. I believe what happened in this case was that when Mr. Aguilera, well, in the jury instruction conference, Mr. Aguilera requested and obtained a multiple conspiracy instruction, instruction 8.22. The government did not object. There were other standard Ninth Circuit instructions that specifically said Mr. Aguilera could not be convicted of any conspiracy other than the conspiracy charged in the indictment. In closing argument, Mr. Aguilera's trial counsel began to argue that point, and specifically when he went to read to the jurors the charge that was the conspiracy that was charged in the indictment, specifically the named co-conspirators, three of whom had never been mentioned throughout the entire trial, and wanted to point out to the jurors the government is asking them to convict on a conspiracy theory that's different than the one charged in the indictment. And that's when the government objected and said facts not in evidence, you can't read the indictment to the jurors, and for whatever reason the trial court sustained that objection and ordered the jurors to disregard that. And thereafter, trial counsel didn't make any further argument with regards to... He wasn't prohibited from doing so. He didn't, but he wasn't prohibited from making the argument with respect to evidence that, in fact, had been introduced. Is that correct? Well, he was prohibited from making the argument that he was attempting to make, which was in... Well, with reference to the indictment, which was not in evidence, but... Correct. It was not in evidence. But did the judge say, you can't make this argument in any other context? I clearly think that's the import of his ruling when he grants the objection made by the government, says you can't reference anything in the indictment. There was no other way to present that evidence to the jurors other than through reading the indictment and the charge in the indictment. So let me ask you about a related question, and that is what was in the indictment versus what was argued and proven at trial. This indictment named several individuals as part of the conspiracy, and then it had the, quote, and others language. Yes. Do you have any cases that would suggest that the and others language somehow didn't cover these unnamed individuals that later then popped up in the evidence? I looked and was unable to find any cases that discussed that specific, or answer that specific question, because obviously I thought it would be important not only to Mr. Aguilera, but I thought the Court might ask that. And that's why it was not in our briefing. I don't believe the government briefed any cases to the contrary. The significance of the and others language, though, here we have count one, and I'm reading from excerpt of record page 0189, which is the indictment in this case. And it alleges the time frame of the indictment, and then it says that Mr. Rodriguez, Mr. Aguilera, Mr. Rico, Mr. Cisneros, and Mr. Sanchez, and then it says and others, and then it has the standard conspiracy language. And if you were to go to trial, I think that language merely means this. If the government were to present evidence of these individuals that are named in the indictment and tried to prove a conspiracy, but within that evidence there were other people involved that might not have been named in the indictment, say a low level supplier, say a runner, someone that would arguably fall within the definition of a conspiracy, what this language does is it prevents the defense from coming forward and saying, oh, no, no, no, the government proved this conspiracy involving more people. It's not the same conspiracy. And what the government wants to do, they want to change this to or others, because that's what they did in their closing argument. To say and others, you would have to prove at least two of these people were in a conspiracy and that others participated, others that weren't named in the indictment. Isn't it true that throughout the trial you argue that counts one and five were completely separate crimes, and the jury did receive a proper instruction on that? Well, Mr. Aguilar did raise these issues pretrial to try to separate them, and those motions were denied. So the case did go to trial, obviously, with both counts. In closing argument, I believe Mr. Kaplan did attempt to make those distinctions, that these weren't, these two counts weren't connected, the count five distribution. But he wasn't allowed to do what Frost and Herring say he's allowed to do, which is argue a lawful defense based upon facts. I shouldn't say in evidence, but based upon a lawful defense theory. But, Counselor, based upon the question that Judge Nelson asked you, doesn't that highlight the fact that your side was able to make the argument that you want? In the trial, in the closing argument, you were prohibited from making reference to particular, I think two items, the indictment and one other matter that was not in evidence. But compare that to Frost, where there was nothing in the record, no chance to make the other argument. Those are different, aren't they? No, I don't believe so. I believe what the Court found in Frost was that they were, was preventing the closing argument. So you're saying that Frost means that if, let's just say that there was a quantum of ten minutes of closing argument, and if Counsel spent nine minutes arguing what you're talking about here and was barred from referring to an exhibit that was not in evidence about the same point, that there would be Frost and therefore structural error? Well, according to the Ninth Circuit, precluding defense counsel from arguing a legitimate defense theory would itself constitute structural error. Well, you're taking that in a vacuum. I'm talking about the facts of the Frost case. That's a very different case than what we have here, isn't it? There there was no, Counsel was prohibited from making the argument at any point, either in closing argument or during the trial. Here that didn't happen, did it? Well, in Frost, he was allowed to present evidence of the two defenses. He was able to attack the beyond a reasonable doubt standard of the evidence by the government, and he presented evidence of addressed defense. It was only after the close of evidence and before closing that the judge said, no, you have to choose, Mr. Frost, which one are you going to pursue? And in that way, he limited it, or the Superior Court in Washington limited it. In this case, what happened was, it's not a distinction between count one and count five. It's about whether count one and the evidence that the government was arguing supported the conspiracy alleged in the indictment. And so when Mr. Aguilera attempted to tell the jurors what he was charged with, specifically the language in the indictment, and was prevented from doing so, I believe that is consistent with both Frost and Herring, at least the Ninth Circuit's interpretation of Herring. So going back to the unnamed individuals from the indictment and the notion that you have that there's two separate conspiracies, but one uncharged in effect, how does the motion to sever figure in, the changing kind of views on the motion to sever figure into this argument? The changing views of the government or the court? I don't think that the defense changed its view, is my understanding. But the government shifted its position slightly as I read it. Yes. And I agree with that representation, Your Honor. The government, in its pretrial memorandum and in opposing the motion to sever, came forward to the district court and said, Judge, don't sever these counts. This is what we're going to prove. And listed out almost like a line item of the evidence that they anticipated to prove the conspiracy. And they specifically name all of the named co-conspirators in the indictment. They list or claim to list, I guess, what would have been acts in furtherance of the conspiracy. And then at trial, they don't introduce any evidence of Ricos, Cisneros, or Sanchez, nor do they present any evidence regarding those acts in furtherance as they told the court that they would in obtaining, I guess, the denial of the motion to sever. And the court then said, I'll hold judgment on that. And then he never got back to it. Is that correct? With all due respect, Your Honor, I think that that's a kind way of describing what the district court said. The district court clearly said that it was a close call, and that if the government didn't prove exactly what they were representing at trial, that he would declare a mistrial. And then when trial counsel asked for that mistrial at the close of evidence, it was denied. So do you think this is best characterized in terms of analysis as a variance or constructive amendment? There seems to sometimes be a little slipping and sliding in the case law on that subject. Well, and I believe this is one of the unusual criminal cases where the facts as they developed at trial actually substantiate both constructive amendment and fatal variance. I think normally this analysis, you have to look very closely to figure out which one you're actually arguing about. And the reason I think both exist are simply this. With regard to the constructive amendment, what the government had done is they expanded the scope of what Mr. Aguilar could be convicted of under the conspiracy count. And they did that by not necessarily arguing this and others' language, but what they said was, and their closing argument was, as to count one, the evidence is equally clear that this is an ongoing conspiracy that involved a Mr. Rodriguez, Chino, who was not indicted, unidentified male number 4915, who was not indicted, David Morgan, who was informed by the government to the court to be a customer and not a co-conspirator, and Mr. Aguilar. And then they said, you only need two for a conspiracy. So what they argued to the court, to the jurors, along with the confluence of these jury instructions that came in on multiple conspiracies, without being informed of the language in the indictment, it allowed the jury to convict Mr. Aguilar of conspiring with David Morgan, with conspiring with unknown male 4915, because they were told they only need two people and Mr. Aguilar was one of them. So that's how it broadened the indictment. With regards to the fatal variance, we have those unique set of circumstances that arose in the Addison case, where the government pre-trial told the court and Mr. Aguilar exactly what they were going to prove at trial, and then changed that proof at trial. And that's why you came up with, I believe you came up with the fatal variance. And under Haring, that also resulted in a substantial prejudice of the, or a prejudice of the substantial rights. And that's why, with regards to fatal variance, I believe there is prejudice. And I am running out of time. Would you like to reserve your remaining time? I'm sorry? Would you like to reserve your remaining time? I'll make a quick statement, then I'll reserve the rest. With regard to the ward case that we cited, I believe that that establishes that the review by this court on the constructive amendment issue is de novo. And that the court shouldn't look for prejudice, although I think we've established prejudice in this case. But I think the proper analysis after the ward case is de novo review. And I will save my remaining time for rebuttal. Thank you. Thank you. Good morning. May it please the court. My name is Lori Gray. I represent the United States. Defendant raised five issues in his brief, none merit reversing his conviction. And I'll begin by addressing his claim that he was precluded from arguing his defense theory in closing argument. The record shows that, in fact, defendant fully was allowed to argue his multi- conspiracy theory. And the record shows, no. In fact, the record shows that in  objectionable argument, the court acted appropriately. Frost held that total preclusion of a closing argument is constitutional error, but made plain that reasonable restrictions does not rise to error, let alone constitutional error. So the issue for your honors is, was defendant totally precluded from presenting his multi-conspiracy theory? And the record shows, no. In fact, the record shows that in closing argument, up to the objectionable comment that gives rise to this issue on appeal, defendant fully argued multi-conspiracy, and that's at SCR 432 and 433. Defendant begins by saying, now turning to count one, and count one is the conspiracy, defendant had absolutely nothing whatsoever to do with the so-called Rodriguez, Jorge Rodriguez, Lalo conspiracy. He goes on to make that argument. He says Brent Billow looked at a photo of Morgan, never saw him. Thousands of pages of pen registers, not one call that relates to Morgan. No evidence of a call from the number used by UM4915 to any telephone used by Rodriguez. There's just no connection. He says there's no agreement or no evidence with respect to Morgan that relates to the Lalo side of the conspiracy. And importantly, he ends this part of his argument at SCR 433 by saying, indeed, you've got an instruction from Judge Breyer saying that if you find there are multiple conspiracies,    you're not guilty. He then goes on, and when he goes on, that's when he argues the facts, not an evidence. There's an objection. The district court properly executes its gatekeeping function, and under Frost, reasonable restriction sustains the objection. Defendant clearly understood the limited nature of that objection because he goes on to argue multiple conspiracies, and probably the best example of this, post-sustaining of the argument, is at SCR 439. There's  under Frost, reasonable restriction sustains the objection. Defendant goes on to argue multiple conspiracies. And there he's referencing a chart, and he's asked the jury to consider the summary of calls, and he says on the left- hand side, you have Morgan. On the right-hand side, you have Rodriguez. There is no overlap between the two cases and the two investigations. That, Your Honors, is arguing multiple conspiracies. And defendant did get the instruction from the court as to multiple conspiracies and buyer-seller. As he said, he asked for, and the court gave this court's instruction, 8.1, and the court gave   8.22, multiple conspiracies. And what that instruction says in the comment section is, given in combination with a proper conspiracy instruction, this instruction is adequate to cover a multiple conspiracy defense. Now, the question is, if we accept that and say that it was certainly permitted to argue to some degree his multiple conspiracy, and he may have misinterpreted the scope of the district court's ruling, but there was no clarification   multiple conspiracies. And at SCR 439, he clearly goes on and argues, makes a multiple conspiracy argument, yes. So what was he indicted for? He was indicted, Your Honor. Multiple conspiracies? No, what he was indicted for was a single, broad conspiracy. And in addressing those arguments that have been raised and that Your Honor asked questions on, I need to clarify the record, because that's important. The government never  conspiracy from indictment, and the government never shifted its position. Through pretrial motions, through trial. The government's trial brief filed 16 months in advance of trial. I wrongly said in the brief four months. 16 months in advance of trial specifically says at SCR 469, distributions of controlled substances that occurred within the time frame of the conspiracy are direct evidence of the conspiracy rather than other act evidence. Distributions of controlled substances that occurred within the time frame of  So the government's argument was a distribution that occurred within the time frame of the conspiracy. Defendant argues, no, no, no, no, no, they said that was 404B. He forgets the key word, alternatively. The government made that argument on 471 after telling defendant that distributions of controlled substances within the time frame are direct evidence. That's the point. But you get then to the point that they're complaining about, which is that you don't have UM4915 and Morgan anywhere in the indictment, and then you have a conspiracy that's not a conspiracy. You have an instruction that says, you know, any two is a pair, basically, for purposes of a conspiracy, and you have these two unnamed individuals on which you could hang a conviction. And I had the same problem, because in reading the record, I see no indication that the two sides even knew each other. Well, Your Honor, if I can finish just making the record clear on what was presented to defendant pre-trial with regard to the motion to sever, which was filed six    weeks before the earliest date of the conspiracy is alleged to have ended,  And the government says, the cocaine distribution conspiracy encompasses the cocaine possession and distribution offense, and says, during the conspiracy, Aguilera bought cocaine from Jorge Rodriguez, moved kilograms of cocaine from his supplier to two customers, Moses Brambilla and David Morgan. On March 15, 2009, roughly two weeks before the earliest date of the conspiracy is alleged to have ended, Aguilera sold Morgan three kilograms of cocaine. That is SCR-478. That is in response to the motion to sever. So that was what the conspiracy was from the beginning through the end, was showing that there was this broad agreement. And it started in November 2008. Let me just stop you there. If there's a problem of either a variance or a constructive amendment with respect to Morgan or the unidentified male, could that be cured by the argument made by the government on this motion to sever? I mean, I understand you're saying, well, you didn't change your position. Right. But does that actually fix anything if there is? Well, that was prior to trial, Your Honor. And what the government's position is, is that there was no constructive amendment because the proof at trial did not broaden the indictment and the defendant was given plenty of notice. As I said, the multiple conspiracy instruction specifically says given in combination with a proper conspiracy instruction, that is adequate. The defendant didn't ask that the jury be read the indictment. The defendant asked for the multiple conspiracy instruction. He was given that. No more was required. And this Court's review was for plain air. Ward didn't change anything. In that case, defense counsel asked for a specific instruction to ensure that the jury didn't convict for conduct not charged in the indictment. He didn't use the magic words, Fifth Amendment. So the Court held that the standard was de novo. Here the facts are flipped. Here defendant asked for his multi-conspiracy instruction, was given it, and never asked for anything more. And the record shows that the Court properly instructed the jury. So any air here would have to be for plain air because the air could not be plain when the Court followed the model instruction and gave 8.22. I think you're missing my point, or I'm maybe not explaining it clearly enough. And that is, your argument is now that, well, there certainly was no surprise about Morgan because he was on the table in advance. What about UM, what is it, 49, whichever? 4915. 4915, whatever number the UM is. Did he come up anywhere? No. But I think, Your Honor, going, and I think I understand, but you tell me if I don't. I think the proof was that there was this single overall conspiracy and similar to Arbelez, like Arbelez, the nature of the scheme was to sell cocaine. And we have that during the limited time period. The time period here is 17 months, from October 2007 through March 2009. And we see drug deals unfold and we hear the discussion. It's cocaine. These guys are talking about cocaine and they're talking about fronting so that they need to have drugs out there and that's anticipated they'll be sold to keep fueling the machine. And that, in Arbelez, made clear that not everyone has to know everyone, but they have to know that they're part of a larger agreement. So that part I understand is you don't have to have a direct line from everyone to everyone else. But with respect to the unidentified witness, he's not charged in the indictment, but the final instruction, basically the two to tango instruction, basically says you only need the defendant and X. And here's a list of the Xs you can choose from. And during the time period, that's important, Your Honor. That it's during this particular time period, this particular place. If the defendant was getting on a plane and going to Tennessee and distributing drugs there, that would be a separate conspiracy. We are a common time, a common place, a common modus operandi, which is the fronting of drugs. Lalo, when he talks to defendants, says, have you talked to your guy? Has your guy gotten back to you? He's well aware that there are others in this. It's a conspiracy with defendant at the middle getting drugs from Maria Taylor's Lalo, who's asking him, do you have your guy, getting from UM4915. And then we have the defendant who's selling drugs to Morgan. So what's your response then to the argument that UM4915 is not in the indictment and that in the end it can be just the two of them that result in a conviction because he's one of the people listed in the possible co-conspirators. And so that, at least as alleged by the defense, is either a variance or a constructive amendment. So I'd appreciate if you could comment on that specifically. Well, the jury is instructed at SCR 413, first, beginning no later than October 10th, 2007, and ending there, must be an agreement between two or more persons, as you say, the two to tango instruction. And at worst, Your Honor, at worst that would be a variance. The evidence at trial proved, you know, that the charging terms were unaltered because it was still a single broad conspiracy. And I do want to address defendant's point that there were these other named people that evidence wasn't presented at trial. Well, two of them had pleaded guilty pretrial and two were fugitives. And I imagine that that would have sustained a 403 objection from defendant if the government said we're going to try this whole drug case with these guys that pleaded guilty to being part of this conspiracy and we can't find these other two. I'm not so concerned about the people that didn't find their way on the table. I'm concerned about the guy who never did find his way into the indictment. And again — And so you say at worst it's a variance. What then is the consequence of that if we characterize it as a variance? Well, then I think, Your Honor, the review is still plain air here. And whether it affected defendant's substantial rights, and I would go back. First, if the air wasn't plain because the court followed precisely the instructions of the Ninth Circuit, defendant didn't ask for anything further. And second, that it did not seriously affect the integrity or fairness of the trial because the evidence was overwhelming that defendant was part of this conspiracy from the intercepted telephone calls with Lalo beginning in November 2008, the taco truck meeting in January 2000 — excuse me, 2009, where Rambilla and defendant are talking and defendant says it's Lalo who has the cocaine. And as a matter of fact, I sold some last month. I got the money. I had to hunt them down and give the money back. And then there were pen register records put in showing the heavy volume of traffic between Lalo and defendant in January and February. And then in March we have the phone calls, Your Honor, with 4915 showing the anatomy of a drug deal. And it's not unusual for drug dealers to have multiple suppliers. In fact, Morgan testified at trial. And he said — this is at volume four, reporter of transcript 599 — the prosecutor asked, in your long career as a drug dealer, can you tell us whether it's unusual to have more than one source you can go to? And he answers no. It's actually overly advantageous because, you know, you don't get stuck in a monopoly, one person dictating the price, whatever. It's more of a free market. It's actually beneficial. And the record shows these defendants knew that. Lalo knew that from the phone calls that, hey, have you talked to your guy? The defendant is distributing. And then we have phone calls with another distributor during a discrete time period with common goals, fronting with the Northern District of California with the 17-month period. And so for that reason, Your Honors, I believe that the indictment was consistent throughout and the proof was consistent with the indictment that was charged, which was the single overall conspiracy to distribute cocaine in the Northern District of California during a 17-month period. So the and others language of the indictment, are you relying on that as sweeping in some additional people that might have been involved in the conspiracy? I think there — yes, the and others would include 4915, but you don't just sweep people in unless the evidence shows there's a tie, Your Honor, and the tie here is defendant. Moving drugs, getting from wholesalers, selling to customers, selling to Morgan who was listed in the severance motion six months in advance of trial. And Morgan's saying, yeah, it's not surprising to us in the business that people have multiple suppliers because you, as in Arbelez, you want to keep the machine going. Now, it's a subagreement, but it's not a different conspiracy. And the jury was charged that they had to find the conspiracy in the indictment. There was two or more. So if, in fact, they rejected defendant's claim that there was a different conspiracy. Counsel, I noticed that the Arbelez case was cited in the briefs. Unlike Arbelez, as far as I can see, and correct me if I'm wrong, the government presented no evidence linking multiple wholesalers, UM4915, Chino, or Rodriguez, to one another. Is that correct? I believe that is correct, Your Honor. I believe that at the taco truck meeting when defendant is talking to Brambilla and they're talking about where are you getting your drugs, defendant says from Lalo and then he says from Chino, he says another dude. But you're right, we do not have a phone call from Lalo Rodriguez to 4915 or to Chino. The center of this indictment was described as an hourglass in closing argument by counsel. The center is the defendant. And he is getting drugs fronted to him. The people that are doing that know they're going to be sold because they want their money back. And then the customers are Morgan and Brambilla who are referenced in the phone calls during this discrete period of time. I realize you're over time, but I want to ask then, there's this commonly used metaphor. Aguilar may have been the hub connected to two conspiracy spokes. Without a rim connecting the spokes, which I don't, as you just said, does not exist, there is only a series of separate conspiracies, not a single overall conspiracy. And I cite the case of Codiacus v. Kenney. Oh, okay. I was going to say that's also Codiacus, the lack of a rim. But in this case, Your Honor, you have. It's not so much a hub and spoke, as I said, as it is the hourglass that you've got Arbelez at the center with his relationship with Lalo and with Brambilla. And his customer down here, Morgan, is tied in because Morgan testified at trial that he'd been getting cocaine from defendants for a large period of time, for during the period of the conspiracy which starts in 2007, that at least to 2007 he had been getting it. And then UM4915 is another distributor. And Lalo's busy talking about at times, I don't have drugs, if you talk to your guy. And for that reason, Your Honor, I believe the evidence shows that there was this single conspiracy. From the government's perspective, Arbelez allows the government to in effect require those involved to imply, understand, know that there are other people involved because of the quantity of the drugs involved, right? And that's true. And I think one thing that really supports that, Your Honor, is the fronting. There's a degree of trust in this. They're fronting. They're handing over $24,500 worth of product. But, I mean, the reality is here, I think all of us are saying, but you've got no direct evidence that some of these people knew that some other named people were involved. You're right. And I gather that the government is contending that that may be true in some instances, but you have enough here because the quantity of drugs involved, the fact that fronting was involved, and under Arbelez, you just know there are other people involved and that's enough. The government contends to show the single conspiracy. Well, you have, that's correct, Your Honor. You have to have the object. I mean, the object of the conspiracy here by all parties was to distribute drugs. Again, if somehow a defendant was doing kiddie porn or child pornography, that would not be part of this conspiracy because what the evidence showed is that everyone that came in touch with Aguilera was dealing with drugs, knew that was the object. So the agreement, the conspiratorial agreement was by action but not necessarily knowing who the other parties were. Yes. But knowing that they were joining a drug-dealing operation. Right. And that's enough from the government's perspective. Yes, Your Honor. You have 20 people behind a curtain and they're all handing out drugs and so on. You don't need to know them. You just need to know that somebody's handing out drugs. That's correct because I want to get my money back. I gave you my drugs. I want my money back. I know you're going to go to someone and sell. I don't know who that someone is or I want to make sure that this well-oiled machine keeps operating during this discrete time period. No further questions? Thank you very much. Thank you. Thank you for the time, Your Honor. The most important thing to point out here is that we don't know who Mr. Aguilera was convicted of conspiring with. And that is known because of the government's argument in closing. It said you can convict him of conspiring with Mr. Mackey.   with this unknown male, with this person nicknamed Chino, and the government never connected any of those people through Mr. Aguilera or otherwise to anyone in the indictment. So to the extent that they're arguing there's a drug connection going on between Mr. Aguilera and Morgan, Chino, and Aguilera, there was never any evidence connecting Mr. Aguilera or any of those other people to the Rodriguez side of this case. Well, let's explore what the government's contention here. The government seems to concede that your client didn't necessarily know and deal directly with some of these people. But the government's point seems to be that given the quantities of drugs involved, given the fronting involved, that you had to know that there were other people involved in this. It just doesn't happen in a vacuum. These are experienced people. And under the case law, that's enough to show a single conspiracy. I gather, obviously, you don't agree with that. Do you have case law that would show that this is inadequate to prove a single conspiracy? Well, I hate to surprise you, Your Honor, but I do agree with you. That is the law. Okay. Okay, a conspiracy can happen. Myself and Mr. Osterhout can conspire, and then I can go deal with someone else as part of this conspiracy. But what the government's argument is missing is they're saying Mr. Aguilera was the cross here. But there's nothing presented in evidence connecting those unindicted individuals to those indicted. So they're not connected to anybody. Well, just to be sure I understand. As I understand it, your client was, in effect, accused of being the middle person, if you will, in that the drugs were going through, buying, selling, and so on. Is that true? No. It's not true, you say? That is not the evidence that was presented. Okay. So where do you think your client fits in from your perspective in this whole thing, aside from saying he's totally innocent of everything? Where does he fit in this? Well, according to the evidence submitted by the government, there is sufficient evidence, I think, that a reasonable juror could look and say, hey, there is a connection over here between this unidentified individual through Mr. Aguilera to Mr. Morgan. But what they failed to do is connect any of those people, including Mr. Aguilera, and any of those transactions to the Rodriguez side of the indictment. Except for what I gather you're now conceding as a matter of general law, that if you knew that there was a sufficient quantity of drugs that somebody else had to be involved, that may be enough, even though they may not have been ñ maybe they didn't know Rodriguez. But that was enough, right? No. It's not enough. You cannot know the identities of other co-conspirators, but they have to be in the conspiracy. Right. So if you have separate conspiracies, which is, I think, at best what the government proved here ñ I'm sorry. At best they proved a conspiracy not charged in the indictment and failed to prove the conspiracy that was charged in the indictment. But could a jury, could a reasonable jury, have believed that the quantity of drugs involved, the role that your client played, be enough to establish a common understanding among more than two people, three, maybe five or more, as the government charged here? No. There's no evidence to support that. Okay. So you're saying there just wasn't any evidence at all to support the Rodriguez side. Correct. There were five wiretaps in this case. They intercepted hundreds of calls. All that was introduced into evidence was two very short and innocuous phone calls between Mr. Aguilera and Mr. Rodriguez. Those are Exhibits 110B and 111B. But taking the evidence in the light most favorable to the government, which you have to do when you're looking also at plain error, it seems to me, you characterize them as innocuous. But when you put Mr. Aguilera in context of what his general business enterprise seems to be, why wouldn't it be fair enough for the jury to draw an inference as to the connection? With regards to those two phone calls? Because there's insufficient evidence, I think, as a matter of the law, to convict anyone of a conspiracy based upon those two telephone calls. The remaining evidence that the government submitted at the trial court was, it all had to do with Morgan. And this unidentified male, and I hate to repeat all the names, but all these other individuals. And then they never connected it to Rodriguez or the conspiracy charged in the indictment. No further questions. Thank you very much. I'd like to thank both counsel for your briefing and argument. The case just ordered, United States v. Aguilera, is submitted. Thank you.
judges: Nelson, McKeown, Smith